Chief Justice Robertson,
delivered the opinion of the Court.
This writ of error is brought to reverse a decree for improvements, assessed in consequence of an opinion heretofore rendered by this court. See Bell’s Heirs vs. Barnet, II J. J. Marshall’s Reports, 516.
The decree must be reversed for the following reasons :
1st. The court below erred in not quashing the report of the commissioners, because the plaintiffs had no notice of the time when they met and made *380 their assessments. The only notice which was ex*hibited or relied on, is one to Benjamin Monroe, as agent for the plaintiffs. But there is no proof that he was, at that time or since, their agent, or that lie acted as such. The ancestor of the plaintiffs expressed, in his will, a desire that Benjamin Monn tí would attend, asa superintendent and manager, to the investigation of his land claims in Green count and declared, in the same will, that he appointed tt.e said Monroe agent and trustee for himsdi (the testator) and his children for the purpose of attending to his said land claims. But the title to the land vested in the plaintiffs at the testator’s death, and it appears from Monroe's affidavit that, for some years prior to the notice to him, he had ceased to act as an agent, and had notified the defendant of that fact.
The designation of Monroe hv the wdll did not constitute him the agent of the plaintiffs, unless they consented to and ratified the appointment. There is no proof that he ever accepted the appointment, or that they acquiesced in it, unless his affidavit be evidence; and if it be, it also proves that he was not an agent when the notice was given to him. The plaintiffs, notwithstanding the will, had a right to appoint their own agent or to manage their own concerns without any agent. Monroe had no interest in the land — he was no party to the suit. It .does not appear that a notice to him was any notitc to the plaintiffs, or that they ever had a notice, actual or constructive, direct or indirect.
2nd. The court erred in not quashing the report for exorbitance. The facts and principles hearing on this point may be seen by recurring-to the case, supra, (in J. J. Marshall.")
The commissioners iiave again assessed $25 an acre for clearing land; and, therefore, allowed §8125 for clearing 149 acres ! To fortify and uphold this extraordinary assessment, sundry depositions have been filed, in all about eighteen ; in a majority of which the opinion is expressed, that $25 an ame is not too much to allow for-snch clearing. Th.eydcscribe”he timber as thick and heavy and chiefly beech, and the clearing as having been, in tiie first *381 instance, “smooth.” They also state, that the common mode of clearing such land in the same county has been to belt or otherwise kill the larger beech trees; and that the clearing of such land, in the latter and usual mode, was-worth from $8 to $12 an acre. It appears, also, that the whole tract of 300 acres, as cleared and improved, was worth not more, at. the maximum, than $3000, and perhaps not more than $2400, although the improvements, as assessed by the commissioners, were alone worth $4282 !
Although oecupant 1ms . gone to extrai ordinary expense in the clearing and improvement of land, he ie not entitled 11 an extraordinary c -m^ ponen tion therefor, but is only entitled to the ordinary value oi Gie-.migitx the ordinary way,and sucli occupant shonltl bo charged with rents, in a similar manner, according to the ordinary value OI Scell land oleare'! in the ordinfiy ry iv a j.
We do not doubt the correctness of the opinion in II J. J. Marshall; unless we erred in allowing for ameliorations since 18)6, and in allowing more than the ameliorations prior to that time.
Howe.ver, if that opinion be, in those respects right, and we are still disposed to think it is, it isas favorable to the delendant as he could expect or in conscience ask : and, therefore, on his part, more should not be required, or permitted, than what is reasonable and just according to the standard established by common opinion, common usage and common Sense. That standard lias not governed this case. The land is worth no more to the plaintiffs than it Would have been had it been cleared by the ordinary process — it will have yielded them but little if any more. And if the delendant chose to adopt an unnecessary and unusual mode of clearing, he is not, therefore, entitled to whatever it may have cost him. If be had extirpated all the stumps, such a process would have cost'him ninth more than even that which he adopted ; hut would he be entitled to the reimbursement of all that he thus unnffcessarily expended, or to full compensation for all the labor employed in such an unusual and reckless manner ? Surely not.
The utmost of his equitable right, in this particular, is the ordinary value of clearing in the ordinary way; and he should he charged with rents, in a simiiar manner, according to the ordinary value of such laud cleared in the ordinary mode. This will be a heaping measure of justin’ to him — (for he cleared th&land without the knowledge or diiect privity of *382 the true owner) — and it is as much as the former opinion contemplated.
Allowance by commissioners, of three dollars ami fifty cents per tree fir the mere •' planting” of an orchard, is exorbitant.
How to ascertain the value of apple orchard put upon the premises by occupant, anil •the quantum of rent that occupant should pay for the land on which the orchard stands.
Haggin, for plaintiffs.
3rd. The commissioners have allowed $¡3 50 cents a tree, for “planting” sixty apple and two pear trees. The report does not shew that any rent, or if any, how much, has been allowed for the use of the trees or of the ground on which they stand. The price allowed is undoubtedly too much ior planting. This is evident from the proof.
The rational, just and legal mode of adjusing such a matter is to allow the customary price for setting the orchard, and for pruning, when pruning may have become necessary, and had been done — and then to charge, for rent, the real annual value of the use of the ground as arable ground, whilst it was arable, and the annual value of the use of the orchard and of the ground of a fruit bearing orchard, after it became such.
4th. The report presents an aggregate of rents without particularizing. It would be desirable to know how much was charged for each year, and for what years, and for what land and improvements ; otherwise it will be impossible, in such a case as this, to decide whether or not the commissioners have made their assessments according to the rules and principles prescribed to them in the former opinion.
Wherefore, the decree is reversed, and the cause remanded for further proceedings in conformity pes well to this as the former opinion.